

## Office of the Attorney General
### State of Texas
January 30, 1992

DAN MORALES
ATTORNEY GENERAL

Honorable Doyle Willis
Chairman
General Investigating Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-83

Re: Application of article III, section 47(b), of the Texas Constitution, which imposes limitations on the kinds of organizations that may conduct bingo games (RQ-255)

Dear Representative Willis:

You have requested our opinion regarding the application of article III, section 47(b), of the Texas Constitution, which imposes restrictions on playing bingo. That section provides:

> The Legislature by law may authorize and regulate bingo games conducted by a church, synagogue, religious society, volunteer fire department, nonprofit veterans organization, fraternal organization, or nonprofit organization supporting medical research or treatment programs. A law enacted under this subsection must permit the qualified voters of any county, justice precinct, or incorporated city or town to determine from time to time by a majority vote of the qualified voters voting on the question at an election whether bingo games may be held in the county, justice precinct, or city or town. The law must also require that:
>
> (1) all proceeds from the games are spent in Texas for charitable purposes of the organizations;
>
> (2) the games are limited to one location as defined by law on property owned or leased by the church, synagogue, religious society, volunteer fire department, nonprofit veterans organiza-

tion, fraternal organization, or nonprofit organization supporting medical research or treatment programs; and

(3) the games are conducted, promoted, and administered by members of the church, synagogue, religious society, volunteer fire department, nonprofit veterans organization, fraternal organization, or nonprofit organization supporting medical research or treatment programs.[1]

You first ask which organizations may conduct bingo under article III, section 47(b) and whether an organization not listed therein may do so.

Section 47(b) makes clear that the legislature is empowered to authorize only those bingo games that are "conducted" by an organization which falls within one of the categories listed therein. An organization that may not properly be classified into one of those categories is not authorized to conduct bingo games. Of course, whether a particular organization falls within one of the categories requires the resolution of factual inquiries that we cannot accomplish in the opinion process.

You also express concern about compliance with subsection (b)(2). You indicate that

[h]undreds of so-called charitable institutions now have permits to play bingo. Many take their permits to lessors who have buildings and who then use the permits and require only one member of each organization to be present. This means that the permit-holder neither owns the building nor leases it. This would appear to be in direct violation of the constitutional provision.

If in fact the charitable organization neither owns nor leases the property on which it conducts a bingo game, the constitutional provision would be violated. *See, e.g.,* V.T.C.S. art. 179d, § 11a (restrictions on rent for bingo premises).

---

[1]Pursuant to this subsection, the legislature has enacted article 179d, V.T.C.S. You do not ask any questions relating to this statute, but rather confine your inquiry to the authorizing language of the constitution.

You appear to be most alarmed about the lack of compliance with subsection (b)(3). You state that

> [t]he organization that holds the bingo permit frequently sends only one member over to the commercial hall where the game is being played and does not conduct the game itself. I feel that this is a violation of this section of the Constitution in that the word "administered" means that the members of the organization shall conduct the bingo games themselves. At the present time, these commercial lessors are paying personnel not affiliated with the bingo permit holders to run bingo games.

In that regard, you ask whether "hired hands who are not members of the organization can actually run the game."

The constitutional provision directs that the games be "conducted, promoted, and administered by members of" the organization that holds the bingo permit. In our opinion, this requirement means that members of the organization must play a substantial role in "running" the bingo game. Black's Law Dictionary defines the verb "conduct" as meaning

> [t]o manage; direct; lead; have direction; carry on; regulate; do business.

BLACK'S LAW DICTIONARY 268 (5th ed. 1979). That same work defines "administer" as

> [t]o manage or conduct. . . . to take charge of business; . . . to manage affairs.

*Id.* at 41. In *William Buchanan Found. v. Shepperd*, 283 S.W.2d 325, 334 (Tex. Civ. App.–Texarkana 1955), *writ dism'd by agr.*, 289 S.W.2d 553 (Tex. 1956), the court declared that the word "administer" does not have a "strict legal or technical import" but is rather "a word in general use," and that it is synonymous with "manage" and "conduct."

We believe it is evident that subsection (b)(3) requires that every bingo game be managed, supervised, and directed by members of the organization holding the

permit. *See* V.T.C.S. art. 179d, § 11(g). The constitution does not, however, demand that every game be conducted or administered *exclusively* by members of the organization. Because we cannot resolve factual issues in the opinion process, we cannot opine on the amount of outside involvement in games which is permissible.

## SUMMARY

Only those organizations named in article III, section 47(b), of the Texas Constitution may conduct bingo games, and such an organization may conduct the bingo game only on property owned or leased by the organization.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General